IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-32179 |
| | § | |
| STORE IT REIT, INC. | § | CHAPTER 11 |
| DEBTOR | § | |
| | § | |
| | § | |
| W. MARC SCHWARTZ, | § | |
| TRUSTEE OF THE STORE IT REIT, | § | |
| INC. LIQUIDATING TRUST, | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| VS. | § | ADVERSARY _____ |
| | § | |
| WILLIAM J. CARDEN, | § | |
| PATRICK T. BARRETT AND | § | |
| JOHN ITZEL, | § | |
| | § | |
| DEFENDANTS | § | |

**LIQUIDATING TRUSTEE'S ORIGINAL COMPLAINT AND OBJECTION
TO PROOFS OF CLAIM OF WILLIAM J. CARDEN AND PATRICK T. BARRETT**

W. Marc Schwartz, Liquidating Trustee (the "Trustee") of the Store It REIT ("Store It")

Liquidating Trust (the "Trust"), files this Complaint against William J. Carden ("Carden"), Patrick

T. Barrett ("Barrett") and John Itzel ("Itzel") (also collectively "Defendants") and Objection to

Proofs of Claim of William J. Carden and Patrick T. Barrett and in support hereof states as follows:

'

## I.      PARTIES

1.      The Trustee was appointed pursuant to the March 16, 2020 Order Confirming Third

Amended Plan of Liquidation and may be served with pleadings and process through his

undersigned counsel.

2.     Carden is an individual resident of Ketchum, Idaho and may be served at P.O. Box 6263, Ketchum, ID 83340 or wherever he may be found.  At all relevant times hereto, Carden was ostensibly an Officer and Director of Store It.

3.     Barrett is an individual residing at 74 Kensington Road, Bronxville, NY 10708 and may be served at this address or wherever he may be found.  At all relevant times hereto, Barrett was ostensibly an Officer and Director of Store It.

4.     Itzel is an individual residing at 79 Highland View, Irvine CA 92603 and may be served at this address or wherever he may be found.  At all relevant times hereto, Itzel ostensibly was an Officer and Director of Store It.

## II.     JURISDICTION AND VENUE

5.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (b)(2)(B) and (b)(2)(O).  Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § § 157 and 1334.

## III.     FACTUAL BACKGROUND

6.     Store It, formerly known as American Spectrum REIT I, Inc., is a Virginia corporation.  Store It is the general partner of and owns 98.64% of Evergreen REIT, LP ("Evergreen").  Store It filed for Chapter 11 bankruptcy protection on April 27, 2018.

7.     At various times relevant to this Complaint, Store It, through Evergreen, owned interests in the following properties:  2155 Laredo Street, San Antonio, TX ("Laredo Street"); 5149 Blanco Road, San Antonio, TX ("Blanco Road"); 10801 Sabo Road, Houston, TX ("Sabo Road"); 7645 Grissom Road, San Antonio, TX ("Grissom Road"); 1001 South Mason, Katy, TX; ("South Mason");  1850 Ephraim Ave., Fort Worth, TX ("Ephraim.") and 5700 River Oaks Blvd, River Oaks, TX ("River Oaks").

***Payments to ASJ Realty Advisors, LLC***

8.       ASJ Realty Advisers, LLC ("ASJ") is, upon information and belief, an entity owned and controlled by Carden. On June 16, 2015 Carden, on behalf of Store It and ASJ executed an Advisory Agreement (the "Advisory Agreement") pursuant to which ASJ was retained to provide "advice and recommendations with respect to all aspects of the business and affairs of [Store It]". A true and correct copy of the Advisory Agreement is attached hereto as <u>Exhibit 1</u> and incorporated herein by reference.  At a Board Meeting purportedly held on October 1, 2015, more than three months after Carden had signed the Advisory Agreement, Carden sponsored and the Board approved the Advisory Agreement.  The Board Minutes do not reflect why Store It needed to hire Carden's company as an advisor.  Between September 2015 and April 2018, Store It paid ASJ no less than $470,000.00.  Upon information and belief, there was no business justification for the Advisory Agreement and Store It received no tangible benefit from these payments to ASJ. Alternatively, the payments to ASJ were excessive and unreasonable compared to any services performed by ASJ during this time.

9.       On September 23, 2016, Carden, again on behalf of Store It and ASJ, executed a Sublease Agreement (the "Sublease Agreement") pursuant to which Store It leased "office space" in the "Big Fish Condominiums" in Ketchum, Idaho, which, coincidentally, is the town where Carden resides.  A true and correct copy of the Sublease Agreement is attached hereto as <u>Exhibit 2</u> and incorporated herein by reference.  The Trustee is unaware of any Board Resolution approving the Sublease Agreement.  Store It paid ASJ no less than $47,500.00 pursuant to the Sublease Agreement.  Upon information and belief, there was no business justification for the

Sublease Agreement and Store It received no tangible benefit from these payments to ASJ. Alternatively, the payments to ASJ were excessive and unreasonable.

**Payments to Capstone Realty, Inc.**

10.     Capstone Realty Partners, LLC ("Capstone") is, upon information and belief, owned and controlled by Barrett.  On May 1, 2015, Store It entered into a Consulting Agreement (the "Consulting Agreement") with Capstone, a true and correct copy of which is attached hereto as Exhibit 3 and incorporated herein by reference.  At a Board Meeting purportedly held on October 1, 2015, more than four months after the Consulting Agreement was signed, the Board approved the Consulting Agreement.  The Board Minutes do not reflect why Store It needed to hire Barrett's company as an advisor.  Between May 2016 and April 2018, Store It paid Capstone in excess of $140,000.00.  Upon information and belief, there was no business justification for the Consulting Agreement and Store It received no tangible benefit from these payments to Capstone. Alternatively, the payments to Capstone were excessive and unreasonable.

***Payment of Carden's Legal Fees.***

11.     Between November 2015 and February 2017, Store It reimbursed alleged legal fees to Carden in excess of $275,000.00.  Upon information and belief, these reimbursements were not approved by any other Officer or Director of Store It and were not supported by back up documentation.  Also upon information and belief, there was no business justification for these payments to Carden and Store It received no tangible benefit from these payments to Carden. Alternatively, the payments were excessive and unreasonable.

***Payment of Excessive Compensation to Carden***

12.     Between 2015 and 2017, Carden was paid "Board of Director Fees" of no less than $70,000.00.  In July 2016, Carden received $505,640.42 that is designated in Store It's records as

"Return of Investment Capital". Between July 2016 and December 2017, Carden received $160,000.00 that is designated in Store It's records as payments for "Tracing Stock". Neither the issuance of the Tracing Stock nor any of these payments to Carden were approved by Store It's shareholders. The Tracking Units Agreement pursuant to which Carden received these payments was issued without proper authority. Upon information and belief, there was no business justification for these payments to Carden and Store It received no tangible benefit from these payments to Carden. Alternatively, these payments were excessive and unreasonable.

***Payment of Excessive Compensation to Barrett***

13. Between 2015 and 2017, Barrett was paid "Board of Directors Fees" of $19,000.00. In addition, between July 2016 and January 2018, Barrett received $200,000.00 that is designated in Store It's records as payment for "Tracing Stock". None of these payments to Barrett were approved by Store It's shareholders. The Tracking Units Agreement pursuant to which Barrett received these payments was issued without proper authority. Upon information and belief, there was no business justification for these payments to Barrett and Store It received no tangible benefit from these payments to Barrett. Alternatively, these payments were excessive and unreasonable.

***Payment of Excessive Compensation to Itzel***

14. Between 2015 and 2017, Itzel was paid "Board of Directors Fees" of $25,000.00. Between July 2016 and March 2018, Itzel received $145,000.00 that is designated in Store It's records as payment for "Tracing Stock". None of these payments to Itzel were approved by Store It's shareholders. The Tracking Units Agreement pursuant to which Itzel received these payments was issued without proper authority. Upon information and belief, there was no business justification for these payments to Itzel and Store It received no tangible benefit from these payments to Itzel. Alternatively, these payments were excessive and unreasonable.

***Unauthorized Sale of Store It's Assets***

15.     Article 4.2 of Store It's Articles of Incorporation requires consent of Store It's shareholders before Store It could sell all or substantially all of its assets.  In March 2016, Carden, individually, and as President of Store It, entered into a Settlement Agreement (the "Settlement Agreement") to sell the following properties owned in whole or in part by Store It:  Laredo Street, Blanco Road, Sabo Road and Grissom Road and to share the proceeds of these sales.  Carden had no authority to enter into the Settlement Agreement on behalf of Store It.  Neither the Settlement Agreement nor the sale of these properties were approved by Store It's shareholders.

***Improper Payments to Third Parties***

16.     In July 2016, Store It sold its Blanco Road and Laredo Road properties for a collective price of $10,500,000.00.  A true and correct copy of the Settlement Statement is attached hereto as <u>Exhibit 4</u> and incorporated herein by reference.  According to the Settlement Statement, Michael Matkins received a "Real Estate Commission" of $420,000.00.  Upon information and belief, Michael Matkins is a resident of California and not a licensed Texas real estate broker.  Also according to the Settlement Statement, Allen Matkins received an $80,000.00 attorneys' fee.  None of these payments were properly authorized by Store It.  Upon information and belief, neither Michael nor Allen Matkins provided any services to Store It to justify these exorbitant fees.  Also upon information and belief, there was no business justification for these payments and Store It received no tangible benefit from these payments.  Alternatively, these payments were excessive and unreasonable.

17.     In January 2017, the Sabo Road property was sold.  Store It held a 55% interest in Sabo Road.  The Settlement Statement is attached hereto as <u>Exhibit 5</u> and incorporated herein by reference.     According to the Settlement Statement, Platinum Storage Group and American

Spectrum Realty, Inc., each received a disbursement of $106,000.00.   Upon information and belief, neither Platinum Storage Group nor American Spectrum Realty, Inc. provided any services to Store It to justify these payments.  None of these payments were properly authorized by Store It.  Upon information and belief, there was no business justification for these payments and Store It received no tangible benefit from these payments.   Alternatively, these payments were excessive and unreasonable.

18.     In June 2016, the Grissom Road property was sold.  Store It held a 65% interest in Grissom Road.  The Settlement Statement is attached hereto as Exhibit 6 and incorporated herein by reference.  According to the Settlement Statement, $360,000.00 of the sales proceeds were paid as a real estate commission "to TBD".  An additional $40,000.00 was paid to the law firm Allen Matkins for "Legal Fees".  None of these payments were properly authorized by Store It. Upon information and belief no services were provided to Store It to justify these payments.  Also upon information and belief, there was no business justification for these payments and Store It received no tangible benefit from these payments.  Alternatively, these payments were excessive and unreasonable.

**Payments to TGG Realty, Inc.**

19.     TGG Realty, Inc. ("TGG") is, upon information and belief, owned and controlled by Itzel.  In August 2016, TGG was paid a $50,000 "advisory fee".  In January 2017, in connection with the sales of Laredo Street, Blanco Road and Grissom Road, TGG was paid a real estate commission of $743,000.00.  None of these payments to TGG were properly authorized by Store It.  Upon information and belief, there was no business justification for these payments to TGG and Store It received no tangible benefit from these payments.   Alternatively, the payments to TGG were excessive and unreasonable.

20.     All conditions precedent to the pursuit of the claims herein have occurred all been satisfied.

## IV.     CLAIMS FOR RELIEF

### A.     Negligence

21.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 to 20, above.

22.     As Directors and Officers of Store It, each of the Defendants owed a legal duty to Store It.  Each of the Defendants breached their duty by failing to conform their conduct to the standard of care imposed by law, and  such breach was the factual and proximate cause of the damages to Store It described above.

### B.     Breach of Fiduciary Duty of Care

23.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 to 20, above.

24.     As Directors and Officers of Store It, each of the Defendants owed a fiduciary duty of care to Store It.  As described above, each of the Defendants breached their fiduciary duty of care to Store It by failing to make decisions in good faith and in a reasonably prudent manner in the best interests of Store It, and such breach was the factual and proximate cause of the damages to Store It described above.

### C.     Breach of Fiduciary Duty of Loyalty

25.     The Trustee realleges and incorporates by reference the allegations in paragraphs 1 to 20, above.

26.     As Directors and Officers of Store It, each of the Defendants owed a fiduciary duty of loyalty to Store It.  As described above, each of the Defendants breached their fiduciary duty of

loyalty to Store It by engaging in numerous self-dealing transactions to benefit themselves or their related entities at the expense of Store It, and such breach was the factual and proximate cause of the damages to Store It described above.

**D.      Tolling of Any Applicable Statute of Limitations**

27.      The Trustee realleges and incorporates by reference the allegations in paragraphs 1 to 20, above.

28.      Any statute of limitations applicable to the Trustee's claims against Defendants were tolled by the affirmative acts of each of the Defendants to conceal and hinder Store It's assertion of claims within any applicable statute of limitations.  Each of the Defendants took affirmative acts designed or intended, directly or indirectly, to obstruct Store It's right to file an action; such affirmative acts consisted of misrepresentations; was of the character which involves moral turpitude; and had the effect of debarring or deterring Store It from action. Due to the fraudulent concealment and misrepresentations, certain of the claims herein could not have been filed within any applicable statute of limitations.

29.      Additionally, any statute of limitations applicable to the Trustee's claims against Defendants were tolled pursuant to 11 U.S.C. § 108.

**E.      Objection to Carden's Proofs of Claim**

30.      The Trustee realleges and incorporates by reference the allegations in paragraphs 1 to 20, above.

31.      The Trustee objects to Carden Proofs of Claim Nos. 13, 14, 15, 16 and 17 as follows:

*Claim No. 13*

a.  Insufficient documentation;

b.  No evidence of the value;

c.  The Tracking Units Agreement was issued without proper authority;

d.  The Tracking Units Agreement was the result of Carden's breach of the fiduciary duties of care and loyalty;

e.  All units issued to Carden pursuant to the Tracking Units Agreement should be canceled; and

f.  This claim should be subordinated to any allowed unsecured claims and any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed unsecured claims or any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

*Claim 14:*

a.  Insufficient documentation;

b.  No evidence of value;

c.  No explanation to support that this claim is against Store It;

d.  The claim accrued, if at all, during the time that Carden was breaching his fiduciary duties of care and loyalty to Store It; and

e.  This claim should be subordinated to any allowed unsecured claims and any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed unsecured claims or any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

*Claim 15:*

a.  Insufficient documentation;

b.  No evidence of value;

c.  No explanation to support that this claim is against Store It;

d.  The claim accrued, if at all, during the time that Carden was breaching his fiduciary duties of care and loyalty; and

e.  This claim should be subordinated to any allowed unsecured claims and any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed unsecured claims or any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

*Claim 16:*

a.  Insufficient documentation;

b.  No evidence of value;

c.  The Indemnification Agreement was issued without proper authority;

d.  The claim accrued, if at all, during the time that Carden was breaching his fiduciary duties of care and loyalty to Store It; and

e.  This claim should be subordinated to any allowed unsecured claims and any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed unsecured claims or any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

*Claim 17:*

a.  Insufficient documentation;

b.  No evidence of value;

c.  The Indemnification Agreement was issued without proper authority;

d.  The claim accrued, if at all, during the time that Carden was breaching his fiduciary duties of care and loyalty to Store It; and

e.  This claim should be subordinated to any allowed unsecured claims and any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed unsecured claims or any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

**F.      Objections to Barrett's Proofs of Claim**

The Trustee realleges and incorporates by reference the allegations in paragraphs 1 to 20, above.

The Trustee objects to Barrett Proofs of Claim Nos. 10, 11 and 23 as follows:

*Claim 10:*

a.  Insufficient documentation;

b.  The Indemnification Agreement was issued without proper authority;

c.  The claim accrued, if at all, during the time that Barrett was breaching his fiduciary duties of care and loyalty to Store It; and

d.  This claim should be subordinated to any allowed unsecured claims and any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed unsecured claims or any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

*Claim 11:*

a.  Insufficient documentation;

b.  No evidence of the value;

c.  The Tracking Units Agreement was issued without proper authority;

d.  The Tracking Units Agreement was the result of Barrett's breach of the fiduciary duties of care and loyalty;

e.  All units issued to Barrett pursuant to the Tracking Units Agreement should be canceled; and

f.  This claim should be subordinated to any allowed unsecured claims and any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed unsecured claims or any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

*Claim 23:*

a.  Insufficient documentation;

b.  No evidence of the value;

c.  The Tracking Units Agreement was issued without proper authority;

d.  The Tracking Units Agreement was the result of Barrett's breach of the fiduciary duties of care and loyalty;

e.  All units issued to Barrett pursuant to the Tracking Units Agreement should be canceled; and

f.  This claim should be subordinated to any allowed unsecured claims and any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed unsecured claims or any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

**G.      Equitable Subordination of Defendants' Equity Interests**

32.      The Trustee realleges and incorporates by reference the allegations in paragraphs 1 to 20, above.

33.      Defendants' equity interests in Store It should be subordinated to any allowed equity interests pursuant to 11 U.S.C. §510(b) or equitably subordinated to any allowed equity interests pursuant to 11 U.S.C. §510(c)(1).

**H.      Declaratory Relief**

34.      The Trustee realleges and incorporates by reference the allegations in paragraphs 1 to 20, above.

35.      The Trustee seeks relief in this action under 11 U.S.C. §157(b)(2)(A), (b)(2)(B) and (b)(2)(O).  In that regard, an actual and substantial controversy exists regarding the validity

of any equity interests held by Defendants in Store It.  Accordingly, the Trustee seeks a

Declaratory Judgment pursuant to 28 U.S.C. §§2201 and 2202:

    a.      That Defendants' equity interests in Store It were acquired in violation of

            applicable law;

    b.      That Defendants' equity interests in Store It are void; and

    c.      That Defendants' equity interests in Store It are canceled.

## V.  PRAYER

WHEREFORE, Trustee respectfully requests that it be awarded judgment as follows:

1. Against Defendants jointly and severally in an amount no less than $3,600,000.00;

2. Sustaining his objections to Carden Proofs of Claim 13-17;

3. Sustaining his objection to Barrett Proofs of Claim 10, 11 and 23;

4. Cancelling Defendants' equity interests in Store It;

5. Subordinating Defendants' claims and equity interests to all other creditors of Store It, including equity;

6. Awarding reasonable costs and attorneys' fees;

7. Awarding pre and post-judgment interest; and

8. Granting such other and further relief to which he may be entitled.

By:   /s/ Michael P. Ridulfo
       Michael P. Ridulfo
       Kane, Russell, Coleman, Logan, PC
       State Bar No. 16902020
       Federal Bar No. 27086
       mridulfo@krcl.com
       5051 Westheimer Road, Suite 1000
       Houston, Texas  77056
       Phone: (713) 425-7400
       Fax: (713) 425-7700
       **Attorney for Plaintiff**